May it please the court. My name is Gene Farber. I represent the appellates in this case. We have an unusual situation in that Russ Bohlke, who was originally a plaintiff in this case, passed away pending this hearing. I have some real problems with the mootness issue. Okay. I can't very well give a driver's license to a dead man. You're absolutely right, and I'm glad you said that. That is not what this case is about. This case is not about getting a driver's license for the plaintiff, whether he's alive or dead. It's not a class action. Right. And as far as his widow getting a license, she doesn't have a problem now. She says she expects to have one in three years when her license runs out, and my guess is if she does, she can sue. This is not something capable of repetition yet evading review. Most people live after they get turned down for a driver's license, and we don't know if she will. Yes, Your Honor. I would like to first address the question of the standing of ISC, Inc., our other plaintiff. ISC, Inc. has standing as an entity whose membership is they represent the interests of their members who are likewise affected by this situation. What we're talking about here is the process. I don't understand how ISC, Inc. can do anything because it's also individual. I mean, the reason that Bolke didn't get his license renewed is that basically he couldn't stop the car when he approached a stop sign well enough, and the instructor thought he was too dangerous. But there's nothing there that says the instructor's going to turn down or the department's going to turn down all the disabled people. Well, Judge, the evidence that we put in with our expert witness, Mr. Scott, Derek Scott, says a number of things. One is that he's had 28 years of experience in this. He's worked with over 700 disabled drivers to get them their licenses. His declaration is replete with a whole lot of barriers that didn't affect Bolke. It seems to me if you want to represent all the other drivers, you need to bring a class action form. I'm talking about the idea that when an individual takes a driving test and fails it, there's no evidence in the record to support the idea that his failure of the driving test is related to his disability. That's what this case is about. And that's the same thing with everybody who goes there. All the disabled who go to DMV and take a drive test according to Mr. Scott are subjected to the same unlawful activity under Title II of the ADA. I mean, it's just what it is. It's not about Bolke's driver's license. So it's not really about Bolke. It is about Bolke to the extent that Bolke, we need a plaintiff withstanding. We have a plaintiff withstanding, ISC. And I would like to say that as far as Mrs. Bolke is concerned, we'd like to put her in as a plaintiff. Your Honor suggests that ‑‑ Then she bring a lawsuit then. Well, I'd like to substitute her into this one. But we have a ‑‑ Does anything bad happen to her? Sure. She went to ‑‑ let me say this. I thought all she said was in three years, I'm afraid something bad will happen to her. Well, that's what it says in the declaration. But it also ‑‑ we also know that when an individual's driver's license is taken away from them, his family has to take him to here and there. So she was impacted by his loss of his license. Now ‑‑ I don't think she said that in the declaration. It didn't. I don't remember that. It's a fact. Could she say that in her declaration, that she was burdened? It does not say that. I didn't remember it saying that she was burdened. It doesn't say that. You're just saying we should assume it. I'm saying it's a fact. And I'd like to be able to put it before the court in the proper form. Declaration is the proper form. Right. And I'd like to be able to do that. This all came up at the last minute. Well, what I'd like to do, you know, to get back, all the substituted plaintiffs can do is to pursue the causes of action that are alleged in the complaint. Right. Right? In other words, she hasn't filed her own complaint. She's just assuming, you know, the position of her former husband, dead husband. Right. Now, what claims in the ‑‑ I guess the second amended complaint are still viable after the death of Mr. Bolke? Well, first there's the ‑‑ Give me a number of points. Cause of action of what? First, cause of action. Second, which are still viable? Do you know? Can you address that? Yes. Okay.  First, cause of action. What about the first cause of action? Oh, yeah. Okay. Your response in order to show cause. Let's look at the second amended complaint. I'm interested in the same question as Judge Deschemin. I think that's what you meant. Yes. Me three. E.R. 546. I think it was 546. Sorry? 546. Okay. So the first cause is the discrimination and violation of Title II of the ADA. Is that still viable? Yes. Why? It's viable through ISC. To the extent that it asks for ‑‑ I'm sorry. Do you mind if we separate out the plaintiffs here? The IS ‑‑ are you saying, and maybe you can address those separately, are you saying it's not viable as to the estate? Yes. Okay. Because, you know, it's for ‑‑ An injunction. An injunction. And how about the second cause under the Rehabilitation Act? Same? Same. And the third cause, access in a public facility? Same? Yes. And the fourth, violation of government code? Same? No. Damages. Well, you dismissed your state law claims, didn't you? No. The judge, as she said, said that she's going to dismiss them because they are not, after taking out the injunctive relief under the ADA. Are you saying, no, you did not dismiss your state law claims? Well, you dismissed one of them. Which one? The one about the ‑‑ The eyes. The eyes. He said the counter was high, and he had to strain himself to get to the eye tester. That remained alive, and you dismissed it so you could get a final judgment. And all the others, ramps or whatever, he didn't claim to have any problem with any of them, so he had no standing for them, as I recall the judge's decision. The ‑‑ Your expert said there are all these things that aren't up to code, but Bolke didn't have any problem. Isn't that right? No. I don't agree with that. Oh, he claimed he couldn't get his wheelchair up the ramp or something like that? I don't remember that. I don't either. That's not my understanding of what that was about. To summarize, on the federal claims, the estate no longer has a viable claim. Right. Okay. And that under the ‑‑ if we're just talking about the federal claims, then ISC would be the plaintiff you claim has standing. Now, as the state claims, you maintain there's one that has damages, and that's what ‑‑ Right. Okay. Damages survive except for personal injury damages, but statutory damages do survive. Okay. By the way, you never filed a response to the motion to dismiss. Actually, we filed one last night. Last night. Well, I haven't seen it. But, you know, in the motion, the state claims that, if I can find it, that you've given up all your damage claims, right? The state claims what? That you've given up all of your damage claims. Isn't that right? The state says that? If you say so, but I don't ‑‑ we did not give up all our damage claims. Well, did you respond to that allegation or that contention in the motion to dismiss? That's the reason I say I haven't seen your response to the motion to dismiss. Essentially what we did is we said that our response to the order to show cause is ‑‑ was our response. And to the extent that the state claims that ‑‑ Here it is. Footnote 2 on page 4 of the motion to dismiss. The state says, after the trial court granted DMV's motion for summary adjudication, Volke voluntarily dismissed his claim for compensatory damages, and they are not at issue on this appeal. That was only as to the eye test. The rest of those things were ‑‑ It doesn't say that here. I'm sorry? It doesn't say that here. It says it's ‑‑ Well, it's wrong. It's wrong. I think so. That's why I asked. Did you reply to this in your ‑‑ in the opposition to the motion to dismiss? Well, we said that ‑‑ Did you say that footnote was wrong? No. So should we accept it as not being wrong? We did say that ‑‑ this is on page 6 of our response to order to show cause at line 19. That, well, to the effect that the ‑‑ On line 7, both these causes of action sought injunctive relief on statutory damages. Those are the state court actions. And so that's ‑‑ I mean, that's ‑‑ the point is that ‑‑ Oh, and here's the stipulated request for dismissal in order. Is that part of the record here? Yes, it is, Your Honor. It's ‑‑ What's the ER citation? Volume 1, pages 3 and 4. ER volume 1, 3 and 4, right? It says the plaintiff hereby requests dismissal of the one remaining federal claim related to the exam with prejudice. That's the eye exam. Right. That's it. So ‑‑ So your position is that you've preserved your other damage claims? Yes. All right. And that's under state law. Under state law. Well, if you have ‑‑ Under state law. You don't have a 54B certification and you don't have a final judgment as to all claims in all parties, if that's so. Yes. But what we want to do is ‑‑ Well, then we will just dismiss the appeal for lack of jurisdiction. Well, there's jurisdiction because ISC has standing. Well, there are ‑‑ It's another barrier. You don't have a final order. I'm sorry. You don't get interlocutory review unless you have 54B or 1292. Right. And what you're saying is, oh, no, everybody thought we could appeal, that there was a final judgment, because all the state claims were dismissed, but that's wrong. They weren't all dismissed. Well, if they weren't all dismissed, then there's not a final judgment as to all claims in all parties, so there's no final judgment, so we don't have appellate jurisdiction. Over what? Over this appeal. Over this appeal. Oh, but you do. How, if it's interlocutory? The state law claims were severed and dismissed to state court. The other ones. The ones that were not dismissed as other. Other. I wonder what that means. It's the ‑‑ Look, are there state law ‑‑ are there any claims still pending or not? Yes. And the trial judge severed and dismissed without prejudice the other state law claims and said we could take them up with the state court. Counsel, maybe you say you still have claims pending. Are you saying that when you use the word pending, you mean that you can bring them in state court? Yes. Do you have them pending, sitting before the district court without resolution? No. No. I mean, as I understand it, you declined to exercise supplemental jurisdiction, period, right? Right. Okay. May I return to the federal claims for a second? Yes, Your Honor. What's your best case that says that ISC has associational standing to raise the claims in federal claims? Let me ‑‑ while you're looking, maybe I can ask it a different way. Let's take, for example, the barrier claims, just the barrier claims in the abstract. Absent an actual injury to an actual plaintiff, how does your organization have standing to raise those claims? The issue of ‑‑ You need an individual plaintiff, don't you? Well, yes. And you don't have one right now for the federal claims? We do in terms of Mrs. Bowman. Can you speak up? We do in terms of Mrs. Boeke. Well, Mrs. Boeke has filed her own claims. The state doesn't have any federal claims left. So don't you need a plaintiff? Do we need a plaintiff? An individual plaintiff who has suffered an injury, in fact. Right. We need ISC as a plaintiff who represent, who has members who are impacted by the DMV's activities that we have. And was there a declaration from a member saying, I was impacted by this activity? A member other than Mr. Boeke. Since ‑‑ I beg your pardon? A member other than Mr. Boeke. Not a declaration, no. Or you have as an expert report suggesting that probably some people are. Well, not only probably, but actually they are. He says they are. It's unrebutted. Right. I mean, it's just not rebutted. Shouldn't have been that hard to find one of them, then. Well, we didn't have a lot of time to do that since this came up. So I'd like the opportunity to do it if it matters. I mean, I don't think it's fair to throw this case out on that basis. Well, we've run through all your time. All right. Unless my colleagues have further questions. No. Thank you, counsel. Counsel. Good morning. I'm William McMahon here on behalf of defendants and appellees, State of California. It would probably be best to start by addressing some of the issues that were raised just before me. On the issue of ‑‑ well, is there any place that the court would find helpful for me to start? Do you mind if I ask a purely practical question? Sure. I mean, we're talking about barrier issues at one location in the context of one of the claims. Aren't those issues resolvable with negotiations with the plaintiff? I mean, these aren't ‑‑ well, I guess in my view of a lot of ADA claims is here we are. We're spending a lot of time looking at them. But in reality, they may be very small things to solve. And I know the state, I'm guessing, would like to make sure that individuals who are physically and mentally challenged have an opportunity to get a driver's license in a barrier‑free environment. So could the circuit mediator be of assistance just to resolve these small things? Well, I'll try and give a practical answer to that question. And I don't need to know settlement negotiations. Sure. The ‑‑ well, the case actually does involve three different DMV facilities. And the DMV takes serious ‑‑ they treat this as a serious issue. And over time, before this case was filed, these three offices, like many others throughout the state, had already been upgraded and made ADA and access compliant. It's DMV's position, of course, that these access barrier claims were thrown into this case in order to exert leverage and try and gain some ground with respect to the licensing claims. So your position, if I can cut to the chase, is you've already solved the problem? The problem has been solved. I mean, I know we're going outside the record, and I don't mean to push you out of that. I'm just getting a peek behind the curtain of the real world here, if you don't mind. And we did negotiate. We did come to an agreement about not only restoring Mr. Bolke's license and taking some actions that he thought would be fair to him, but the whole thing broke down over attorneys' fees. So here we are. But, again, as a practical matter, the DMV does take it seriously, even though it's their position that the Title II accessibility standard is different from that in Title III matters. These buildings are, nonetheless, ADA compliant. And as the court noted, Mr. Bolke has never once claimed that he was denied any kind of physical access or meaningful access to the DMV's programs or services. How about the exam, the exam issues that were raised? And is Your Honor referring to his eye test exam or the driving exam? Well, I think the broader issues raised as to whether or not the DMV systemically fails to acknowledge handicapped issues. You know, again, the DMV, for instance, the drive test examiner who administered Mr. Bolke's driving test, she has been a drive test examiner for over 14 years at the time of that test. She has specific training related to evaluating the abilities of disabled drivers and specific training related to the use of various hand controls. She had administered dozens of driving exams to individuals with using hand controls. I don't mean to cut you off here, but I think I understand your factual defense on this case. And I gather is it the DMV's position that it is compliant with all applicable standards, or is this something you're addressing? No, it is their position that the DMV does comply with applicable standards. So there is a conflict then between the plaintiff and the defendant on this issue? Oh, absolutely. It's plaintiff's contention that there is some sort of blanket policy or underground regulation whereby disabled people are treated differently. For instance, if they fail their drive test, according to plaintiff, then their license is automatically yanked. There's no evidence of that. DMV definitely denies that. And I guess to close the loop on my question, I apologize to my colleagues for chewing up the time here, but I gather the answer is you don't believe the circuit mediator would be of assistance in this case.  All right. I guess I'll address the compensatory damages claim that was discussed here briefly. That footnote in our motion to dismiss is based upon several things. One is the fact that Bulky's counsel during our motion for summary judgment hearing, which was a lengthy hearing, the counsel stated that they were only seeking compensatory damages on the eye test claim, which is the claim that they ended up dismissing voluntarily. With respect to any other ADA or Rehab Act claim, you know, they haven't come anywhere near close to showing that DMV acted with deliberate indifference or any other kind of standard that might entitle them to compensatory damages. Put that aside, though, because they explicitly said on the record, and I think that a party must be held to the statements of their counsel during a court proceeding. The only other thing that would have entitled plaintiff to compensatory damages is under various state law claims that they brought, under the Unruh Act, for instance. Well, those, too, have been more or less dismissed. We know that the Federal court denied to exercise supplemental jurisdiction. They dismissed them without prejudice, so they're being refiled in the State court. Sure. And so more or less, it was more. Is that right? I'm sorry. Repeat that, sir. You said they were more or less dismissed, and I thought they were just plain dismissed. Oh, yes.  They were plain dismissed. Are you talking about which claims? All of the State law claims? In this Federal court action, the original action, all State law claims were dismissed by the court. Without prejudice. Without prejudice to refiling. Now, here's the important point. Bulkey acknowledged in that response to the OSC, right, the motion to substitute in Victoria Bulkey as a personal representative, Bulkey acknowledges in there that they have no compensatory damage claims, even in State court. He acknowledges that. We don't need to reach that issue, do we? I mean, the question before us is whether, you know, if we agree with the District Court on Federal issues, then the question is whether she abused her discretion in dismissing the State claims without prejudice and failing to exercise supplemental jurisdiction. Right? Yes. I mean, so maybe I'm misreading it, but why would we need to reach any of those claims? You know, I'm only trying to illustrate for the Court the extent to which Bulkey has walked away from any claim for compensatory damages, both here and in State court. But the only that he represented orally in argument on the summary judgment motion, that the only claim for compensatory damages he was making was on the eye test, and then he voluntarily dismissed that in order to get a final judgment that he could appeal to us. Yes. Is that right? That's correct. So that's all we need to know about compensatory damages. All right, Your Honor. Is that am I missing something? I mean, I don't care what's going on in State court unless it was an issue of discretion to send it there. Okay. Now, in your view, then, what claims have the plaintiffs preserved in Federal court? The ADA claim for injunctive relief? The injunctive relief claims are gone on behalf of both Bulkeys. What do you mean by gone? They are moot, and so on. I'm not talking about, you know, whether they're moot. I'm talking about whether or not the plaintiffs have voluntarily dismissed them or the district court ruled, you know, against the plaintiffs and dismissed them. The plaintiffs have not dismissed the ADA. In fact, that's why they're appealing, right? Correct. But they at least purported to preserve their ADA claims. Yes. They purported to preserve their ADA claims on the license examination. Correct. Now, in your view, then, what claims have the plaintiffs preserved in Federal court? The ADA claims on the access to the three DMV facilities in Marin County? Yes. Those are preserved. And also the Rehabilitation Act claims? Yes. On both the exam and the access? Yes. Any other claims that, as far as you understand, the plaintiffs assert that they've preserved? No, Your Honor. And those are only injunctive relief claims or equitable claims and not damage claims? That's my understanding, Your Honor, based upon statements made by plaintiffs. Because of the representation made at the summary judgment hearing? Yes. All right. So now, with respect to those claims, your position is that what? The injunctive relief? Let's break them into two. Let's say the access claims and the license exam claims, all right, just for simplicity. Now, you contend that the access claims have become moot? Yes. The access claims should become moot because, well, they were moot before Mr. Bolke died because he never returned to any DMV office and he never claimed that he was being deterred from returning. But after his death, they're certainly moot because there's no chance that Mr. Bolke is going to be subjected to this. Okay. Well, what about the organizational plaintiff? And now we're talking about the access barrier claims, correct? The organizational claims are subject to any of these things. But with ISC, Inc., there is no other ISC, Inc. member here who claims they have been subjected to anything. There is a failure of proof on Bolke's part that any of these things exist. When you say failure of proof, you mean proof was required at what stage? Like, you mean in response to some summary judgment motion? In response to summary judgment motion, there was a complete failure of proof that any of these existed, Your Honor. All right. Now, what about the license exam claims? Are those being asserted on behalf of the class or by the organizational plan? Well, not on behalf of a class, but they do assert them on behalf of ISC, Inc., meaning that they have other disabled members who may be subject to some bad act by the DMV. Is it your position that those claims are also moved? Yes, Your Honor. Why is that? Because the claims that are asserted in the complaint and throughout this case, no matter how plaintiff tries to spin it, they're asserted on related to specific acts that the DMV took with respect to Russ Bolke's license. And so they require specific and intensive fact-finding in order to resolve. And that completely undermines this claim of associational standing. And so without an individual who has been harmed by DMV, that disappears for ISC. All right. Now, let me just ask one more question. And have you seen the plaintiff's opposition to your motion to dismiss? Yes. Do you have any response to that? It wasn't an opposition. It was a one-sentence thing that merely pointed to the OSC response filed in December, which was also the motion to substitute Ms. Bolke. They point to that and they say, we've already filed papers related to this issue. And when you look at those papers, they cite all state authority with respect to substituting in a party. They don't discuss any of these issues that are raised in the motion to dismiss. Thank you. Counsel, on the organization, I'm just curious about something. I was looking for something in the second amended complaint about the organization and didn't find it. Is there any evidence or declaration or anything that there are any members of that organization other than Mr. Bolke? No. He states that it's an organization whose purpose is to, you know, protect or advocate for the rights of disabled people. It may very well be. It may be incorporated. I want to know if it has anybody in it except for the man who's deceased. I couldn't find other evidence of that. They barely have a website. And looking through Pacer and other cases involving ISC Inc., they all seem to involve Mr. Bolke as well. There were two or three other lawsuits raised. He claims that to the extent we have evidence, the organization consists of Mr. Bolke and his personally established corporation. You're asking, do we have evidence of that? Do we have evidence that's anything more? Well, there's no corporate disclosure statement filed, so I'm uncertain. And the only evidence we have is Bolke's statement that he is the national treasurer of this branch of ISC. He would be if he's the only member. But we don't know. We don't know. Is that right? Do we know if there are any other members? I do not know. Could be 100,000. Could be one. We don't know. Right? Yes. I guess in conclusion, I would just like to emphasize that these actions taken by DMV with respect to Mr. Bolke's license and his exam were taken in the interest of public safety, and it seems almost impossible that this court could fashion some sort of injunctive relief order that would not impinge upon the discretion that we vest in DMV personnel to make these decisions. They're at the front lines. We ask them to do this job, and there's no evidence that they harbored any kind of discriminatory motive towards disabled people. Thank you, counsel. The appellant ran through all his time, so unless my colleagues have further questions, Bolke v. State of California is submitted.
judges: Kleinfeld, Tashima, Thomas